# TYLER TERM, 1902.

## SAM DODSON v. THE STATE.

### No. 2597.   Decided October 22, 1902.

**1.—Murder—Evidence—Declarations of Defendant.**

On a trial for murder it was not error for the court to refuse to permit defendant to testify what he told another party had caused an abrasion or knot on his face, where it was not made to appear that said statement was res gestae, and where it was evident that the statement was made some time after the killing and after defendant had gone about the transaction of other matters.

**2.—Same—Charge as to Disparity of Size and Strength of Parties.**

On a trial for murder, where such issue is made by the testimony, it is proper for the court to charge on the question of disparity of size and strength of the deceased and defendant.

**3.—Permitting Additional Testimony After Evidence Is Closed.**

It is a matter within the sound discretion of the court to permit the State to call additional testimony after it has closed and before argument.

### ON MOTION FOR REHEARING.

**4.—Murder—Evidence of Declarations of Deceased as to His Criminal Antecedents.**

On the trial of a convict guard for the murder of a convict, where defendant relied on self-defense, it was competent for him to prove that deceased had told him on a prior occasion that he had been sent to the penitentiary for murder, as this tended to prove the desperate character of deceased and would render his acts more significant to defendant.

**5.—Impeaching Testimony—Charge as to.**

See statement of the case for charges upon impeaching testimony which, though not necessary to be given, held not to be erroneous or in conflict with previous decisions.

Appeal from the District Court of Ellis. Tried below before Hon. J. E. Dillard.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

Appellant was charged by the indictment with the murder of Allen Brown, on the 6th day of September, 1901, by shooting him with a pistol.

The case is sufficiently stated in the opinion.

The charges of the court as to impeaching testimony alluded to in the opinion, are as follows, viz:

"Where evidence has been admitted by the court tending to impeach or discredit a witness, the admission of such evidence does not have the legal effect of withdrawing the evidence of such witness from the consideration of the jury, but they should take into consideration the evidence of such witness sought to be impeached or discredited along with the impeaching evidence, and along with all other evidence in the case, and from all such evidence it is the province of the jury to determine whether or not such is worthy of belief, and if so, to what extent."

"The jury are instructed that they should not consider any evidence before them (if any) which was admitted before them for the purpose of impeaching or discrediting any witness or witnesses in the case except for the purpose of determining the credibility of the witness or witnesses sought to be impeached or discredited."

"The jury are instructed that if they believe from the evidence that State's witnesses Ike Barfield and Dave Widman each made statements in regard to the facts of this case to defendant's witness C. E. Lee, the morning after the homicide, which was materially different from their testimony on the stand, then they are further instructed not to consider such statements except for the purpose of determining the credibility of each of said witnesses respectively."

*W. M. McKnight* and *Templeton & Harding,* for appellant, filed an able brief in the case.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of five years.

Appellant was a convict guard and deceased a convict. The killing occurred at the camp where the convicts were working, about nightfall. During the supper Tobe Dodson, whom it appears was a "trusty" convict, and deceased engaged in a quarrel, the witnesses calling it "joshing" one another, and applied opprobrious epithets to each other. They came in from supper to the tent where their sleeping bunks were, and appellant told them to stop quarreling, and had all the convicts go to their bunks. The convicts, some four or five in number, including

the deceased, were chained in their bunks as usual. After they were chained, Tobe Dodson, who was not chained, and Allen Brown (deceased), again commenced quarreling. Defendant drew his pistol, and got the strap used to punish convicts, and told Tobe Dodson to get on Brown's head while he whipped him. Dodson demurred to this, saying he was a convict, but picked up a pick handle just back of the tent, and came back, still jawing Brown. Brown said: "I will not be a convict always; I will fix the son of a bitch or sons of bitches." At this, Barfield, who in conjunction with appellant was in charge of the camp, told defendant if he was going to whip Brown to whip him and quit fooling. Brown said that Dodson could whip him, but that Tobe could not sit on his head. Appellant said he did not want to whip him if he would be quiet. Brown then lay down on his bunk, and commenced talking with Will Ross, who was sleeping with him. After a little while he said, "Oh, Lordy! I have been mistreated this day." Appellant, Dodson, then got up from his bunk, and walked to within ten feet of where Brown was sitting upon his bunk, appellant having a pistol in his hand, and raised it up in both hands, and said, "God damn you, I will kill you this time," and fired, the shot taking effect in the forehead of deceased. Deceased fell back on his bunk and died in a few minutes, not saying a word after he was shot. This is in accordance with the State's theory, which is supported by three or four witnesses; that is, all of the eyewitnesses except appellant himself. Appellant testified as did the other witnesses with reference to the quarrel between Tobe Dodson and deceased, and about chaining the convicts, including deceased, to their bunks or sleeping places. He also states as do the other witnesses with reference to threatening to whip Brown. He further says that after the prisoners were chained he lay down on his cot; that Barfield and Tobe Dodson had gone out of the tent to the eating shack; deceased raised up on his mattress, and said he would not be there always; that "God damn them [using some vile language] he would get them when he got out;" that he did not understand deceased to be referring to him by the epithets; that he then got up from his bunk, took the whipping strap in his right hand, his pistol in his left hand, and determined to whip Brown for his disobedience of the rules and obscene language, and went up to Brown's bunk and struck him one lick with the strap; that Brown immediately caught him by the left wrist; that he pulled back and Brown came upon his foot; that defendant dropped the strap, and reached with his right hand for his pistol, which he got; Brown then grabbed him with his other hand by the arm above the elbow, and struck him in the face with some hard substance, and then jabbed his head in his (appellant's) breast; that he then shot Brown in self-defense; the negro was stronger than he, and he did not know what the result of the scuffle would be, but he thought Brown might get his pistol from him; that he did not have a copy of the rules, but it was the custom of the superintendent and assistants to maintain discipline among the convicts, and suppress quarrels and obscene language by

chastising with the strap.  Appellant also introduced in evidence the order of the commissioners court passed in 1897, authorizing superintendents and assistants and guards to maintain good order and discipline among convicts, directing and authorizing them to inflict reasonable chastisement, without cruelty or brutality, upon any convict who might violate any of the rules or discipline or any reasonable requirement of the guard or assistant in charge, or was guilty of any insubordination. This is a sufficient statement to enable us to review appellant's assignments of error.

Appellant insists that the court committed an error in not permitting him to prove by himself that previous to the homicide deceased had told him that he had been in the penitentiary and had served a term there for murder.  The objection of the State was sustained, and the testimony excluded by the court.  Appellant claims that he did the killing in self-defense, under the apprehension that from appellant's conduct at the time that he would kill or seriously injure him, and that the testimony sought would shed light on his action, and show to the jury that he believed deceased was a dangerous man because he had previously told him he had been convicted of murder.  If it be conceded that appellant, under the general order of the commissioners court, had the right in the exercise of reasonable discipline, and that he went about this in the proper manner, so as not to constitute him the aggressor in the homicide, still it does not occur to us that this testimony was admissible under the rule laid down in Childers v. State, 30 Texas Crim. App., 193.  In that case the circumstances disclose that appellant could not have known the general character of deceased if he had a general character in that community as being a dangerous and desperate man, appellant being a stranger there, and what deceased said about himself as to his being a desperate and dangerous man, being recently conveyed to appellant, was admissible as the best evidence attainable.  In this case there is no testimony showing that appellant was a stranger in that community, or that he was unacquainted with the general character of deceased.  On the contrary, the evidence shows that the parties were acquainted, and evidently had been for some time.  We do not believe the testimony was admissible.  Heffington v. State, 41 Texas Crim. Rep., 315.  We would further observe in this connection that, although the court gave a charge on self-defense and appellant had the full benefit thereof on the trial, this is predicated on appellant's testimony alone, which is, in the face of all the other testimony in the case, that of three or four eyewitnesses, and in contravention of the physical facts, which are proven.  It had previously been suggested to appellant by Barfield, who assisted him as a convict guard, to chastise deceased if he desired to, but that he did not attempt to do so then, nor did he subsequently, according to his own testimony, call in any assistance, but proceeded about the chastisement in the above manner.  Armed with the pistol and the strap, he began to whip deceased, who at the time was chained to his bunk; and then, because in the struggle deceased may have struck

him with something, he immediately drew his pistol and killed him. His conduct on this occasion does not accord with our views of self-defense. However, as stated, he had the full benefit of such a defense, predicated upon the flimsy pretext afforded by his evidence.

Appellant also complains because the court refused to permit him to testify as to what he told Will Brown caused the abrasion or knot on his face. He urges that this was a part of the res gestae. It does not appear, however, how long after the homicide he made this statement to Will Brown. It was evidently some time thereafter, and when he had gone about the transaction of other matters.

We have examined the charge of the court on impeaching testimony, and it appears to be in accord with the authorities on the subject. Holbert v. State, 9 Texas Crim. App., 219, 35 Am. Rep., 738. It was not necessary that the court should instruct the jury at all in reference to this matter, but the instruction as given was not erroneous.

It was proper for the court to charge on the question of disparity of size and strength of deceased and appellant, inasmuch as the appellant made this issue by the testimony. The use of the term "great bodily strength" was in accord with the evidence, and, if appellant was not entitled to the charge on self-defense, the charge as given with reference to the disparity of size and strength as between him and deceased was certainly not calculated to injure him.

Nor was it improper for the court to charge, as it did, on the impeaching evidence relating to statements of some of the witnesses made outside of the courthouse different from those related by them on the stand. It has been repeatedly held that it was not cause for reversal for the court to permit the State to call additional testimony after it has closed, and before the argument. This is a matter in the sound discretion of the court.

There being no error in the record, the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

HENDERSON, Judge.—The judgment in this cause was affirmed at a previous day of this term, and comes before us now on motion for rehearing. Appellant insists that the court committed an error in the original opinion in holding that the court below acted correctly in rejecting evidence offered by appellant that a short time prior to the homicide deceased had told him that he had been in the penitentiary and had served a term there for murder. Appellant's insistence is that the court was wrong in holding that the principle announced in Childers v. State, 30 Texas Crim. App., 193, did not apply. We have re-examined the question as presented in the motion for rehearing, and in our opinion appellant's contention is correct. Appellant, according to his own testimony, relied on self-defense; that is, under the circumstances of this case appellant was entitled to produce in evidence any

fact, hearsay or not, which would go to explain his condition of mind at the time and his grounds for apprehension as against deceased. If appellant had the right to chastise deceased, and there was evidence on that point, and it was proper to submit this issue to the jury, then, if deceased resisted such chastisement, and by some act or demonstration of his caused defendant to believe that his life was in danger or his person in danger of serious bodily harm, he had a right to have in evidence any fact which tended to prove the bona fides of his belief; and in reconsidering this question we are of opinion that it was competent for him to prove in this connection the fact that deceased had told him on a prior occasion that he had been sent to the penitentiary for murder, as this tended to prove the desperate character of deceased, and would probably render more significant the acts of deceased so far as appellant was concerned.

Appellant strenuously insists that the court committed an error in the original opinion in holding that the court's charge on impeaching testimony was not erroneous; and in support of his contention cites us to the cases of Howard v. State, 25 Texas Crim. App., 693; Winn v. State, 34 Texas Crim. Rep., 37; Poyner v. State, 40 Texas Crim. Rep., 640; Crockett v. State, 40 Texas Crim. Rep., 178. We have examined the charges in said cases which were held to be erroneous, but it does not occur to us that the charge here given was similar or subject to the vice contained in the charges in the cases cited. We do not believe in this case that any charge should have been given on the subject, as the impeaching evidence could not have been used for any other purpose.

For the errors discussed the motion for rehearing is granted, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*

Delivered December 12, 1902.