### Scotty Ferguson v. The State.

No. 7041.   Decided February 14, 1923.

Rehearing granted June 27, 1923.

#### 1.—Murder—Charge of Court.

Where the court instructed the jury upon the law of murder, manslaughter and self-defense on both actual and apparent danger, and the law of threats both communicated and uncommunicated, there was no error in refusing requested charges thereon.

#### 2.—Same—Bills of Exception—Filing—Practice on Appeal.

Where the term of the District Court adjourned on the 28th day of January, and the bills of exception and evidence relating to the motion for a new trial are not filed until the 29th of March, following, they cannot be considered on appeal, and issues of fact presented in the motion for a new trial must be filed during term time;  besides there was no merit in the motion.

#### 3.—Same—Failure of Witness to Testify.

This   court would strain the rule of law protecting the purity of the jury's verdict to the breaking point if the verdict were vitiated by the fact that the jury commented upon the absence of testimony of a witness who was named by one of the parties.  Following Montgomery v. State, 13 Texas Crim. App., 75.

#### 4.—Same—Communicated Threats—General Reputation—Charge of Court.

Where a witness testified to communicated threats, and his general reputation was challenged and defendant complained of the charge of the court in that it did not limit the testimony of the witness, there was no reversible error.

#### 5.—Same—Argument of Counsel.

In the absence of a bill of exception showing objection to the argument of State's counsel or of any request to withdraw the same, there is no reversible error.   .

#### 6.—Same—Evidence—General Reputation.

After the State had introduced evidence to the effect that the general reputation of the deceased was that of a peaceable man, the defendant sought to introduce an indictment against him charging him with robbery, which

the court rejected, there was no reversible error, it being obvious that this could not have formed an element in the control of his action at the time of the homicide.

**7.—Same—Threats—Evidence—Rebuttal.**

Where defendant introduced testimony that the deceased had made threats against his life, that the deceased was a dangerous and violent man, etc., testimony on the part of the State that the deceased bore he reputation of a kind an inoffensive man, was competent.

**8.—Same—Evidence—Reputation—Cross-Examination.**

Where State's witnesses testify that the deceased bore the reputation of a harmless, peaceable and inoffensive person, in rebuttal to the theory that he had made threats and was a violent and dangerous person, the defense should have been permitted on cross-examination of these State witnesses to show that deceased had been indicted for the offense of robbery, and the refusal to do so was reversible error.

Appeal from the District Court of Limestone. Tried below before the Honorable A. M. Blackmon.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*O. F. Watkins*, and *Callicut & Johnson*, for appellant.—On the question of cross-examination as to reputation of deceased, Forrester v. State, 38 Texas Crim. Rep., 245; Stull v. State, 47 id., 547; McGray v. State, 38 id., 609; Britton v. State, 47 id., 597; Patterson v. State, 83 id., 169; Johnson v. State, 241 S. W. Rep., 484; Waters v. State, 241 id., 496.

*R. G. Storey*, Assistant Attorney General, and *L. W. Sheppard*, for the State.

MORROW, PRESIDING JUDGE.—The conviction is for murder; punishment fixed at confinement in the penitentiary for a period of five years.

G. C. Gibson was shot and killed by the appellant.

Appellant justified the act upon the ground of self-defense. There was evidence of threats against the appellant made by the deceased and communicated to him. Appellant testified that he had been advised that the deceased was a dangerous man. Both the deceased and appellant were peace-officers; both were armed. The testimony of the appellant and some of his witnesses supported the theory of self-defense.

The court instructed the jury upon the law of murder, manslaughter and self-defense, and upon both actual and apparent danger; also upon the law of threats, both communicated and uncommunicated.

None of the complaints of the charge or of refusal of special charges are deemed tenable.

The term of court adjourned on the 28th day of January. The bills of exceptions and evidence relating to the motion for new trial were not filed until the 29th of March following. This precludes their consideration. To authorize the review of the action of the trial court upon the issue of fact presented in the motion for new trial, the evidence upon which it acted must be filed during the term at which the conviction is had. This is the rule stated in the case of Black v. State (41 Texas Crim. Rep. 185) and has been followed without exception in subsequent decisions. We will add, however, that if properly presented, the motion is without merit.

The point made is that the jury discussed the failure of Sam Allen to testify in behalf of the accused. Appellant testified that Allen was the Chief of Police and had communicated to him threats purported to have been made by the deceased Gibson. We think the fact that the jury's discussion of the failure to call Allen as a witness would not be receiving other evidence as forbidden by Article 837, subdivision 7, Code of Crim. Proc.; Moore v. State, 52 Texas Crim. Rep., 341; Wood v. State, 86 Texas Crim. Rep., 550. It was a matter which was made known to them by the conduct of the trial. The appellant testified that Allen had given him certain information. The rule of law protecting the purity of the jury's verdict which was contemplated by Article 837, would be strained to the breaking point if the verdict was vitiated by the fact that the jury commented upon or discussed the absence of the testimony of a witness who was named by one of the parties as being possessed of knowledge of relevant facts touching upon the matter under investigation. Public policy puts some limit upon the right of jurors to impeach their verdict. Thompson on Trials, Vol. 2, Sec. 2618; Bearden v. State, 47 Texas Crim. Rep. 271; Montgomery v. State, 13 Texas Crim. App. 75.

The witness Hall testified to the communication of threats. His general reputation for truth and veracity was challenged. Appellant complains of the charge of the court in that it did not limit the testimony of the witness; that the general reputation of Hall was bad. We understand that where facts are testified to which are in their nature susceptible of being used to the injury of the accused for other purposes than impeachment, it is incumbent upon the court, in response to proper objection or request, to embrace in his charge a limitation of the testimony to the purpose of impeachment. We do not understand that the evidence of the witness's general reputation for truth and veracity is bad comes within this rule. The cases to which appellant refers—Wilson v. State, 39 S. W. Rep. 373; Winfrey v. State, 56 Texas Crim. Rep. 819—do not support appellant's position. They relate to the well known rule which requires

the limitation of proof of extraneous matters which might, if not explained, be appropriated to an improper purpose.

Counsel for the State, in his argument, stated in substance that he was not permitted to prove by Mrs. Gibson the purpose for which the deceased went to town on the night of his death; that he then referred to the baby in the arms of the widow of the deceased and said: "It is not very old." As disclosed by the bill, no objection was urged to the argument; nor was any request made to withdraw it by special charge or otherwise. No surrounding facts are given which would characterize the remarks as of such harmful character as to render them per se reversible error.

After the State had introduced evidence to the effect that the general reputation of the deceased was that of a peaceable man, the appellant sought to introduce an indictment against him charging him with robbery. The rejection of this evidence is made the subject of complaint. Apparently it comes within the rule which forbids the establishment of character by the introduction of proof of specific acts or misconduct. We deem the cases cited in support of this proposition inapplicable. Nelson v. State, 58 S. W. Rep. 107; Dodson v. State, 44 Texas Crim. Rep. 200; Smith v. State, 67 Texas Crim. Rep. 27, 148 S. W. Rep. 699; Johnson v. State, 11 S. W. Rep., 668; 28 Texas Crim. App., 17. These authorities support the rule often given effect in this State that in a homicide case in which the issue of self-defense is presented, facts known to the accused which would be relevant to his state of mind are admissible in evidence. In the application of this rule, it is permissble for the accused to testify to specific acts of violence of the deceased which were within his knowledge or of which he has been informed. In applying this rule in Johnson's case, supra, a previous indictment against the injured party for assault with intent to murder upon the accused was held competent. In the case before us, the appellant testified but did not suggest that he had heard or knew that the deceased had been charged by indictment or otherwise for the offense of robbery, or that he had committed the offense of robbery. Appellant having no knowledge of the indictment for robbery, it is obvious that this could not have formed an element in the control of his action at the time of the homicide. The exclusion of the testimony, in our judgment, was not erroneous. See Wharton's Crim. Evidence, Sec. 1756.

The appellant introduced evidence that the deceased had made threats against the life of the appellant; that these threats were in mind at the time of the homicide, and the appellant having further testified that he has been informed that the deceased was a dangerous and violent man and that the fatal shot was fired in response to a demonstration by the deceased indicating an intention to execute the threat, the evidence on the part of the State that the de-

ceased bore the reputation of a kind and inoffensive man was competent. Russell v. State, 11 Texas Crim. App. 296; Sims v. State, 38 Texas Crim. Rep. 642; Cornelius v. State, 54 Texas Crim. Rep. 177; Canon v. State, 59 Texas Crim. Rep., 407; Rhea v. State, 37 Texas Crim. Rep. 140; Menefee v. State, 50 Texas Crim. Rep. 250; Branch's Ann. Tex. Penal Code, Sec. 2095.

In several bills of exceptions it is shown that certain State witnesses testified that the deceased bore the reputation of a harmless, peaceable and inoffensive person. This testimony was in rebuttal of the theory advanced by the appellant and supported by testimony that the deceased had made threats against him and was a violent and dangerous person. On cross-examination of these State witnesses who had testified that the general reputation of the deceased in the respect mentioned was good, they were asked if they had heard that the deceased had been indicted for the offense of robbery. An affirmative answer to this question would have been given, but the court refused to receive it upon the ground that it was not pertinent or relevant upon the issue of violence. The ruling of the court was erroneous. The knowledge of the State's witnesses upon the subject on which they were talking, that is, the character of the deceased as a kind and inoffensive man, was a proper subject of inquiry on cross-examination. From Wharton's Crim. Ev., p. 1013, we take the following quotation:

"So a character witness who has testified as to the good or bad character of the witness whom he is called upon to sustain or to impeach may be cross-examined as to his knowledge of the acts that contradict his testimony, not for the purpose of establishing such acts, but to test the witness's credibility, so the jury may be assisted in determining the weight to be given his testimony."

See Forrester v. State, 38 Texas Crim. Rep. 245; Stull v. State, 47 Texas Crim. Rep., 547; McGray v. State, 38 Texas Crim. Rep., 609; Hall v. State, 43 Texas Crim. Rep. 479; Brittain v. State, 47 Texas Crim. Rep. 597; also Patterson v. State, 83 Texas Crim. Rep., 174; Johnson v. State, 91 Texas Crim. Rep., 582, 241 S. W. Rep., 484; Waters v. State, 91 Texas Crim. Rep., 592, 241 S. W. Rep., 496.

These witnesses would have testified, according to the approved bill of exceptions, that the deceased Gibson had been indicted by the grand jury of Limestone County for the offense of highway robbery with firearms, and that they had heard the charge against the deceased discussed. Highway robbery by the use of firearms being an act of violence entirely incompatible with the peaceful and inoffensive disposition which, according to the State's witnesses in question, characterized the deceased, and the indictment for that offense against him being one in their own neighborhood, it was not only relevant but an important fact as bearing upon the knowledge of the State's witnesses who gave the testimony under discussion and their good

faith in the statement. The purpose of their testimony was to show that the deceased was not a man of violent and dangerous character, and not one who might be reasonably expected to execute a threat made. This is an issue involved under the statute, Article 1143 of the Penal Code.

In refusing to permit the cross-examination of the character witnesses mentioned, the learned trial judge, in the opinion of this court, fell into error which requires a reversal of the judgment, which is ordered.

*Reversed and remanded.*

ON REHEARING.

May 16, 1923.

LATTIMORE, JUDGE.—This case was reversed for the sole error of the refusal of the trial court to permit appellant to ask three witnesses for the State if they had heard that deceased had been indicted for highway robbery. In a very strong motion for rehearing the State insists that we erred in concluding this action of the trial court to be an error of such materiality as to call for a reversal. We have most carefully reviewed this contention and the authorities cited by the State and those referred to by us in our original opinion.

The complaint of appellant in regard to the refusal of the trial court to admit such testimony, appears in bills of exception Nos. 17, 18 and 19. Each of these bills is identical except as to the name of the witness, and in part is as follows:

"Be it remembered that upon the trial of said cause, after the witness Bob Hannah had been permitted by the court to testify, over the objection of the defendant, that he knew the deceased, Grover Gibson during his lifetime, and that he knew his reputation for being a harmless or inoffensive man and a peaceable man, then the defendant asked said witness, on cross-examination, whether or not he had heard that the deceased had been charged by indictment in one case which, at the time of his death, was pending in the district court of Limestone county, charging the deceased with highway robbery, but the State objected to the witness answering said question."

It is obvious from this quotation that each of said bills of exception fails to show that any of the witnesses had testified that the general reputation of deceased in the community in which he lived for being a peaceable, law-abiding man, was good. It is not enough for a witness to testify that he knows the general reputation of the party inquired about, but it must be made to affirmatively appear that the witness had testified that said reputation was good or bad, as the case may be. This defect in each of said bills of exception escaped our notice upon original consideration of the case. It is manifest that none of said bills presents error in the condition in

which they appear in the record. It might also be observed that each of said bills of exception further reflects the fact that the reputation inquired about and which appears to have been known to the witness, was not the general reputation of the deceased. A question which merely inquires for the reputation of a party, does not bring itself within the comprehension of a proper inquiry. Until the bills of exception show that an issue was before the court properly, to which cross-examination was pertinent, it would not be erroneous for the trial court to reject that which would otherwise be a proper cross-examination.

We conclude that we were in error in reversing this case because the bills of exception complaining of the rejection of the testimony were not in such condition as to properly present the contention of the appellant.

Believing ourselves to have been in error, the motion for rehearing will be granted, the judgment of reversal set aside and an affirmance ordered.

*Affirmed.*

ON REHEARING.

June 27, 1923.

HAWKINS, JUDGE.—On February 14, 1923 the judgment of conviction was ordered reversed and the cause remanded because of an error on the part of the trial judge in not permitting certain cross-examination of state's witnesses relative to the general reputation of deceased. On May 16th, 1923 a rehearing was granted to the state and the reversal set aside and the judgment affirmed on what we now believe to have been a misconception of the record. In the opinion of May 16th, reference is only made to bills of exception 17, 18 and 19. It is contended by appellant in his motion for rehearing that bills of exception numbers 14, 15 and 16 should be considered by us in connection with the ones mentioned. In bill number 14 it is stated that Robert Hanna at the instance of the state testified that the reputation of deceased was not that of a dangerous man, but that he was an inoffensive fellow. Bill number 15 discloses that T. R. Wiley, a witness for the state, testified to practically the same thing, and bill number 16 shows that Nat Archer also gave like testimony. Bill number 16 is qualified with the following explanation:

"——defendant had testified to threats on the part of deceased, and had offered testimony tending to prove that deceased was such a man as was likely to execute such threats, and in rebuttal of this the state was permitted to offer testimony to the effect that deceased was not a person whose reputation was that of being a dangerous or violent person."

Bill number 17 which complains at the refusal of the court to

permit appellant to interrogate Hanna as to his knowledge that an indictment for robbery was pending against deceased at the time of his death is explained by the court with reference to the qualification to bill number 16, and bills numbers 18 and 19 relating to the refusal of the court to permit appellant to interrogate Wiley and Archer upon the same subject are also approved with reference to the explanation affixed to bill number 17. It will be seen therefore that appellant is right in his contention now made that the six bills of exception should be considered together, and as so considered clearly present the question in the mind of the writer of the original opinion.

Believing the case was properly disposed of by a reversal upon its original submission we pretermit a discussion invited by appellant in his motion for rehearing upon the question of newly discovered evidence.

The order granting the State's motion for rehearing and ordering an affirmance will be set aside, the original opinion reinstated, and a reversal and remanding of the cause thereunder is now ordered.

*Reversed and remanded.*