**Toni Mudd THOMPSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1009–82.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 14, 1983.

---

Robert G. Brame, Huntsville, for appellant.

Henry Wade, Dist. Atty., Tom Streeter, Marian Bentley and A.W. Arnold, III, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant's conviction for murder is before us on her petition for discretionary review. The Dallas Court of Appeals affirmed in an unpublished opinion. A brief recitation of the facts is therefore necessary.

The undisputed testimony[1] established the deceased, Bobby Thompson, met appellant, his wife, at the Headliner Lounge in Dallas at about 6:00 p.m. on September 22, 1978 and the two drank, played pool and visited with others. At 8:30 p.m., after making a phone call, the deceased told appellant (whom he called "Diane") he had to run an errand that would take about an hour and a half, and asked if she wanted to go along. Appellant declined; the deceased told her in that event, he would meet her at home.

Appellant stayed in the bar and continued her activities. When the deceased returned at approximately 10:00 p.m., appellant was still there. The deceased approached her and asked her why she was still there. He continued to complain and finally appellant said, "To hell with it, I'm going home;" a fairly quiet argument ensued.[2] However, the attention of some patrons turned to the couple when appellant "slid off" her bar stool and said, "Get off my fucking case Bobby, or I'll shoot you." Appellant was backing away from the deceased, around the side of and behind the bar. Her husband began walking toward her with his arms outstretched—according to appellant, like he was going to grab and choke her—and said, "Now Diane." Appellant continued to back up. When her back hit the cash register appellant pulled a pistol from her purse; the deceased, who was about five feet from her, took another step, and appellant fired, fatally wounding him in the abdomen.[3] Asked "Why did you do that?" by the proprietress, appellant replied, "I'm tired of his shit."

When the police arrived, one officer asked, "What happened?" Appellant said, "I just shot my husband because he whipped my ass." Noticing at that point that appellant was holding a gun, the officer instructed her to drop it. She laid it on a table.

Appellant testified that when she shot she did not aim and did not intend to kill the deceased; she was only trying to keep him away.

Appellant also testified to violent incidences between her and deceased over the course of their three month marriage when he was intoxicated, including his threatening to kill her while holding a sawed off shotgun to her head, knocking her off a bar stool by hitting her in the jaw with his fist then dragging her by the hair, among others. She testified that before their marriage the deceased once hit his father in the head with a hammer and was committed by his family for alcohol addiction. She further testified the deceased owned several

---

1. Disputed evidence will be so identified.

2. There was testimony from one State's witness that the bar was noisy, it was hard to hear and "in a bar you don't pay attention to other people's business."

3. The sequence described in the text is a summary of appellant's testimony. Two State's witnesses testified that when appellant's back hit the cash register, she pulled the gun and immediately shot Thompson.

knives and firearms and he had told her that he had been convicted numerous times for carrying weapons and driving while both intoxicated and under the influence of drugs.

Defense witnesses testified the deceased's reputation for being a peaceable and law-abiding person was bad; that he had a bad reputation for being violent, quarrelsome and dangerous when intoxicated; that he had a reputation for going "haywire," "tearing up clubs, turning over furniture and beat[ing] his wife" when "high on pills or alcohol." Appellant introduced a pen packet reflecting the deceased's prior conviction for aggravated assault on a female by an adult male.

In addition, the autopsy report reflected an undescribed knife was found on the body of the deceased at the hospital. That report also established the deceased was highly intoxicated by alcohol at the time of his death.

Outside the presence of the jury, appellant sought to introduce official Dallas County records reflecting, *inter alia,* five prior convictions of the deceased for carrying weapons.[4] Though the record does not reflect the State's objection to this evidence, the trial court's ruling was as follows: "All right. Because of the State's objections, I am going to sustain the objection ... to all except I will overrule the objection to 6 [deceased's conviction for aggravated assault on a female], and allow No. 6 into evidence because it *is a prior act of violence, indicated on the conviction, whereas the others are not.*"[5]

## I. OPINION BELOW

The court of appeals disagreed with the trial judge's assessment of this evidence and the reason he stated for excluding it.[6] However, it was held below that the ques-

4. The deceased was convicted for this offense in two separate causes on July 11, 1973, in one cause on February 14, 1974, in one cause on May 16, 1974 and again on May 30, 1975.

5. All emphasis is added by the writer of this opinion unless otherwise indicated.

6. The court of appeals stated:

tioned prior convictions were not admissible on the issue of the "reasonableness of the defendant's claim of apprehension of danger" because the record did not reflect the defendant was aware of the incidents at the time of the homicide. The court of appeals also held the evidence was not admissible on the issue of "whether the deceased was the aggressor" because "there is no evidence that the witness offering the record of the prior convictions of the [deceased] had any personal knowledge of the specific acts of violence or misconduct giving rise to the conviction[s]."

■■■ We first observe that proof of the convictions was not offered by any witness. The evidence was offered in compliance with Section 4 of Article 3731a, V.T.C.A. Civil Statutes, which,

> "provides a method by which the content of records—declared admissible by Section 1—may be introduced into evidence without the court attendance of a legal custodian, which would otherwise be required in order to lay the testimonial predicate for admission."

*Todd v. State,* 598 S.W.2d 286, 292 (Tex.Cr. App.1980). The content of each of the records offered here was the bare *fact* of conviction—not the factual details giving rise to each offense. It follows that *if* the bare fact that the deceased had been five times convicted for unlawfully carrying a weapon was probative of whether he was in fact the aggressor, then establishing such fact by official records without a live witness was perfectly legitimate. Moreover, the requirement of "personal knowledge" is obviated when the facts sought to be proved are admissible as an exception to the prohibition against hearsay evidence—such as those contained in official records.

> "Although the trial judge expressed his opinion that these prior convictions were not evidence of a violent character, we are not convinced, under the facts and circumstances of this case, that these prior convictions should have been excluded for that purpose."

Therefore, the records were not excludable for the reason that no witness could testify as to their contents from personal knowledge, and the court of appeals erred in so holding.

■ Neither do we agree with the court of appeals' assessment of the record to the effect that appellant was not shown to be aware of the deceased's prior convictions for carrying weapons at the time of the shooting. While she did not testify to knowing the specific dates the deceased had been convicted, the record reflects appellant's husband had told her about "different cases on pistols, and knives" and "that he had been to jail for a bunch of weapons cases." This knowledge on the part of appellant was sufficient to authorize proof of the prior convictions *if* the fact of those convictions was probative of the reasonableness of her apprehension of danger at the time of the killing.

Having concluded the court of appeals erred in holding the questioned evidence was excludable for the reasons stated, we now turn to a determination of whether that evidence was probative of any material issue in the case.

## II. MATERIAL ISSUES RAISED BY JUSTIFICATION DEFENSE

■ In a homicide case, when there is evidence of some act of aggression on the part of the deceased which is sufficient to raise an issue as to whether the defendant justifiably caused the death in self-defense,[7] evidence of both the general reputation of the deceased for being of violent or dangerous character,[8] and prior specific acts of violent misconduct committed by the de-

ceased which illustrate his violent character,[9] are generally rendered admissible. *Lowe v. State,* 612 S.W.2d 579 (Tex.Cr.App. 1981); *Beecham v. State,* 580 S.W.2d 588 (Tex.Cr.App.1979); *Dempsey v. State,* 159 Tex.Cr.R. 602, 266 S.W.2d 875 (1954); *Henry v. State,* 151 Tex.Cr.R. 284, 207 S.W.2d 76 (1947); *Meeks v. State,* 135 Tex.Cr.R. 170, 117 S.W.2d 454 (1938).

These types of evidence are admissible if probative of one or both of the following issues:

### A. REASONABLENESS OF CLAIM OF APPREHENSION OF DANGER?

■ V.T.C.A. Penal Code, § 9.31, provides a person is justified in using force[10] against another when and to the degree,

"he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force."

Because this provision squarely places the defendant's state of mind at the time of the homicide in issue, when it is invoked, the deceased's reputation for violence and commission of prior specific acts of violence *which are known to the defendant*[11] are probative of whether the defendant reasonably believed the force he used was immediately necessary to protect himself. See *Dempsey,* supra. Cf. *Mahaffey v. State,* 471 S.W.2d 801 (Tex.Cr.App.1971) (Opinion on Appellant's Motion for Rehearing).

### B. WHO WAS THE AGGRESSOR?

■ In order to raise selfdefense as an issue, there must be some evidence of aggression on the part of the deceased. Section 9.31, supra. Often that evidence—as in

---

**7.** Or in defense of another. See *Lowe v. State,* 612 S.W.2d 579 (Tex.Cr.App.1981). See also V.T.C.A. Penal Code, §§ 9.31, 9.32 and 9.33.

**8.** It is important to remember that general reputation testimony is not gleaned from witnessing specific acts of misconduct. See *Beecham v. State,* 580 S.W.2d 588 (Tex.Cr.App.1979).

**9.** A person who has only heard of specific acts of misconduct cannot testify as to them, but may give general reputation testimony. See *Beecham,* supra.

**10.** "Deadly force" is justified under § 9.32, supra.

**11.** Or of which the defendant has been informed. *Dixon v. State,* 634 S.W.2d 855 (Tex. Cr.App.1982); *Dempsey,* supra; *Nicholson v. State,* 91 Tex.Cr.R. 383, 239 S.W. 206 (1922); *Smith v. State,* 67 Tex.Cr.R. 27, 148 S.W. 699 (1912); see also *Wood v. State,* 486 S.W.2d 359 (Tex.Cr.App.1972).

the instant case—is ambiguous; see *Wood v. State,* 486 S.W.2d 359 (Tex.Cr.App.1972); less frequently, the evidence clearly shows the deceased first pulled a weapon, but even this may be ambiguous. Thus, it is the rule that reputation evidence concerning the deceased's violent character or prior specific acts of violence committed by him are admissible in so far as they tend to *explain* the deceased's conduct; because this evidence is probative of "who was in fact the aggressor" in the fray (as opposed to "what the defendant thought"), the defendant need not show his own awareness of it at the time of the offense, but like all evidence, it must be established by admissible evidence at trial. *Lowe,* supra; *Lewis v. State,* 463 S.W.2d 186 (Tex.Cr.App.1971); *Dempsey,* supra.

### III. WAS EXCLUDED EVIDENCE PROBATIVE OF A MATERIAL ISSUE?

#### A. REASONABLENESS OF CLAIM OF APPREHENSION?

■ Applying these principles to the instant case, the first issue we confront is whether the fact appellant knew the deceased had been five times convicted for unlawfully carrying a weapon was probative of her state of mind at the time of the offense. Restated, does the fact of these convictions tend to illustrate her claimed belief that her use of force was necessary under the circumstances, was a reasonable belief? We find it does not.

Appellant never testified throughout 150 pages of testimony that she thought her husband was armed, that he might use a weapon against her, or even that she was afraid he would kill her. She stated he had his hands out as if he might grab and choke her. Asked why she pulled the pistol, appellant replied, "Because I was scared of him." Asked the reason she shot her husband, appellant stated, "Just to keep him away from me, I knew if he got ahold of me that I was in for a bad time."

Under these circumstances, we are not persuaded the bare fact of the deceased's convictions for weapon possession was probative of the reasonableness of the appellant's belief her use of force was necessary within the meaning of §§ 9.31 and 9.32, supra.

#### B. PROBATIVE OF DECEASED'S AGGRESSION?

The final issue before us is whether the fact deceased had been convicted for unlawfully carrying weapons tended to explain his ambiguous conduct in walking toward appellant with his hands out as she backed away, was in fact aggressive.

In oral argument before this Court, the State contended the deceased was merely walking toward appellant, that there is no evidence whatever of aggression on his part; the State was willing to concede that if the deceased's conduct was ambiguously aggressive, appellant is probably entitled to a reversal.

■ Of course if the evidence cannot be construed so as to present a question as to the deceased's aggression, selfdefense was not raised at all. Still, from the court's charge to the jury we must presume that at least impending use of force by deceased was an issue in the case.[12] Thus, appellant was entitled to establish the deceased's violent character in order to show and explain that his walking toward her, as he did, constituted "force" within the meaning of Chapter 9.

■ We are unwilling to say that carrying a weapon is *per se* a "violent" or "aggressive" act of and by itself. See *Johnson v. State,* 650 S.W.2d 414 (Tex.Cr.App.1983). Law enforcement officers, for example, often carry weapons for years without using or exhibiting them in a show of force. Clearly, then whether the act of carrying a weapon is violent depends entirely on the surrounding circumstances. Moreover, un-

---

**12.** The record affirmatively reflects the State had no objection to the court's instructions to the jury.

like the situation in which the State establishes the fact of a defendant's admissible prior conviction, appellant here was free to develop the details of the deceased's conduct which gave rise to each of the convictions, and if it could be shown any or all of them involved acts of aggression, such evidence would have been appropriate for the jury's consideration on the question of whether he was the aggressor here. But no showing of the underlying circumstances was made here. Accordingly, appellant failed to establish the prior convictions involved acts of violence which would explain the deceased's ambiguously aggressive conduct toward her at the time of the offense.

In sum, we hold the evidence was correctly excluded by the trial court.

The judgment of the court of appeals is affirmed.

ONION, P.J., and TEAGUE, J., concur in result.