COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-003-CR
DANIEL ALONZO REYNA          
           
           
           
           
           
APPELLANT
A/K/A DANIEL A. REYNA
V.
THE STATE OF TEXAS           
           
           
           
           
           
    STATE
------------
FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
------------
OPINION
------------
Appellant Daniel Alonzo Reyna a/k/a Daniel
A. Reyna appeals from his conviction for the murder of Samuel "Sammy"
Delapaz. Appellant pled not guilty, and a jury convicted him and sentenced him
to life in prison. In three points, Appellant contends that the trial court
erred in limiting Appellant's testimony, in admitting evidence as to Appellant's
gang membership at the guilt-innocence phase, and in permitting the impeachment
of a defense witness. We affirm.
Background
In the early morning hours of July 15,
2000, Appellant and Delapaz became involved in an altercation at Shooters, a
Fort Worth bar and pool hall. Each shot the other with a gun. Appellant shot
Delapaz in the hand and the head. Delapaz shot Appellant in the side. The shot
to Delapaz's head ultimately caused his death.
Testimony at trial conflicted as to
whether Appellant or Delapaz had shot first. Marla Pyka, Delapaz's girlfriend,
testified that Appellant had fired first. Appellant and several defense
witnesses, including Raul Perez and Jose Chavez, testified that Delapaz had
flashed his gun first and fired the first shot.
Over Appellant's objection, the court
allowed the State to impeach Perez with prior convictions for DWI, possession of
marijuana, and evading arrest. The court admitted testimony of Maria Salinas, an
officer with the Fort Worth Police Department's Gang Intelligence Unit,
indicating that Appellant, Perez, and Chavez were members of Sur Trese, a
criminal street gang in Fort Worth, and, as members of the same gang, might lie
to protect one another.
Limiting Appellant's
Testimony
In his first point, Appellant contends
that the trial court erred in limiting his testimony concerning the victim's
violent character when Appellant had raised the issue of self-defense. At trial,
Appellant testified that he was scared of the victim for "a couple of
reasons." The court, however, would not allow Appellant to testify as to
why he was afraid of the victim. Appellant's more specific complaint is that the
trial court erred in refusing to admit testimony that would have shown prior bad
acts of the victim: 1) that he had been in a fight with unidentified parties at
Shooters "prior" to the shooting;(1) 2)
that he had just been released from the penitentiary for burglary of a
habitation; 3) that he carried a gun "from time to time;" and 4) that
he was a drug dealer.
An appellate court reviews a trial court's
decision to admit or exclude evidence under an abuse of discretion standard. Burden
v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). An appellate court
will not reverse a trial court's ruling unless the ruling falls outside the zone
of reasonable disagreement. Id.
Generally, a defendant in a homicide
prosecution who raises the issue of self-defense may introduce evidence of the
victim's violent character. Tex. R. Evid. 404(a)(2); Torres v. State,
71 S.W.3d 758, 760 (Tex. Crim. App. 2002). The defendant may offer opinion or
reputation testimony to prove the victim acted in conformity with his violent
nature. Tex. R. Evid. 404(a)(2), 405(a); Torres, 71 S.W.3d at 760.
Specific, violent acts of misconduct may be admitted to show the reasonableness
of the defendant's fear of danger, or to show that the victim was the first
aggressor. Torres, 71 S.W.3d at 760.
This general rule is not without
limitation. Rule 404(b) provides for the admissibility of specific bad acts only
to the extent that they are relevant for a purpose other than to show character
conformity. Tex. R. Evid. 404(b); Torres, 71 S.W.3d at 760. Because a
victim's unambiguous, violent or aggressive act needs no explaining, evidence of
the victim's extraneous conduct admitted in conjunction with his unambiguous act
would have no relevance apart from its tendency to prove the victim's character
conformity, and thus would be inadmissible. Tex. R. Evid. 404(b); cf.
Thompson v. State, 659 S.W.2d 649, 653-54 (Tex. Crim. App. 1983) (holding
that when the victim's conduct was ambiguously aggressive, prior, specific acts
of violence are admissible only so far as they tend to explain the victim's
conduct). Two conditions precedent must exist, therefore, before an extraneous
act of the victim will be admissible to support a claim of self-defense: 1) some
ambiguous or uncertain evidence of a violent or aggressive act by the victim
must exist that tends to show the victim was the first aggressor; and 2) the
proffered evidence must tend to dispel the ambiguity or explain the victim's
conduct. See Torres, 71 S.W.3d at 762; Thompson, 659 S.W.2d at
653-54 (finding that the appellant was entitled to establish the victim's
violent character to explain his ambiguously aggressive conduct of walking
toward the appellant with his arms outstretched).
The State argues that the trial court
properly excluded testimony regarding various alleged bad acts and prior
misconduct by the victim because the evidence supporting Appellant's assertion
that the victim was the first aggressor was unambiguous. We agree. Unlike the
victim's ambiguous act in Thompson, here the victim's conduct of
allegedly flashing his gun at Appellant and of allegedly shooting Appellant
first are unambiguous acts of aggression and violence that need no explanation. See
Thompson, 659 S.W.2d at 654. Because of the unambiguous nature of the
victim's alleged conduct, neither the first nor second conditions precedent are
met. See Torres, 71 S.W.3d at 762. We hold that the proffered testimony
does nothing more than show character conformity. See Tex. R. Evid.
404(b); Torres, 71 S.W.3d at 760. Accordingly, we overrule Appellant's
first point.
Gang Membership
In his second point, Appellant contends
that the trial court erred in admitting evidence at the guilt-innocence phase of
trial concerning his gang membership because the prejudicial effect of admitting
the evidence far outweighed its probative value. See Tex. R. Evid. 403.
In particular, Appellant complains of the admission of Officer Salinas'
testimony that indicated Appellant had admitted voluntarily to being a gang
member as part of a police gang unit profiling program. Because Appellant failed
to properly preserve error, if any, we overrule this point.
In a hearing outside the presence of the
jury and before the defense started its case in chief, the State suggested that
if Appellant called several witnesses on his witness list, it would
cross-examine them about their and Appellant's membership in the Sur Trese
criminal street gang for the "limited purpose of bias regarding their
testimony or motivation to lie." Appellant's only response was "[w]e
will object to that." The trial court overruled the objection. Appellant
did not object on the grounds of rule 403 at any time.
Later the prosecution questioned several
defense witnesses regarding their membership in Sur Trese, and Officer Salinas
testified that the Fort Worth Police Department had identified Appellant and two
other defense witnesses as gang members. Appellant's only objections were on the
grounds of "speculation" and "leading the witness," based on
rules 602 and 611(c), and not upon the grounds of relevance or that the
probative value of the evidence was substantially outweighed by its prejudicial
effect as required by rules 402 and 403. See Tex. R. Evid. 402, 403,
602, 611(c).
A general objection "amounts to no
objection," and does not preserve error for review. Tompkins v. State, 774
S.W.2d 195, 218 (Tex. Crim. App. 1987), aff'd, 490 U.S. 754 (1989); see
Tex. R. Evid. 103(a)(1); Tex. R. App. P. 33.1(a)(1)(A). Here, Appellant's
general objection, "[w]e will object to that," did not preserve the
rule 403 complaint he asserts on appeal. See Tompkins, 774 S.W.2d at
218. We overrule his second point.
Impeachment of Witness
In his third point, Appellant contends
that the trial court erred in permitting impeachment of defense witness Raul
Perez with proof of prior misdemeanor convictions outside the scope of rule 609.(2)
The State argues that Perez opened the door to impeachment because Perez's
testimony left the jury with a false impression that Perez had been conducting
himself as a law-abiding, hard-working, family man since abandoning his contacts
with gang members. Even if Perez did not create a false impression, the State
argues that any error was harmless.
Perez's Testimony
On direct examination, Perez testified
that the victim had lifted his shirt and showed Appellant a gun tucked in the
waistband of his pants. Perez said that, in response, Appellant "pulled
out" his own gun. He also said that the victim fired at Appellant first.
On cross-examination, the State
established that Perez was Appellant's cousin; that he had a number of unusual
tattoos; that he was considered to be a gang member by law enforcement
authorities, though he denied being one; that he was familiar with gang signs;
and that he knew "several members" of the Sur Trese gang, although he
also denied that Appellant and Chavez, another defense witness, were members.
On re-direct, defense counsel tried to
show that Perez was no longer involved in any gang activity. Perez testified
that he was "just friends" with Sur Trese gang members and had never
been a gang member himself. He said that his only participation in activities
with gang members was drinking beers with gang members at a party at his house
in 1994 when he was in high school. Perez maintained that he had not had
"anything to do" with gang members since leaving high school. Perez
made several references to his youth and childishness at the time of his
association with gang members. The State argues that, in particular, the
following testimony by Perez opened the door to Perez's criminal history:

        
 Q. Have you had anything to do with these [gang members] since you got out of
 high school?
        
 A. No, sir.
        
 Q. What have you been doing since you got out of high school?
        
 A. I got -- I have a family, I have two little boys and I just recently got
 divorced.
        
 Q. Have you been working since you got out of the high school?
        
 A. Yes sir.

The State argued to the trial court that
the effect of this testimony left a false impression with the jury that Perez
had "just been working and taking care of his family and things of that
nature," and the trial court agreed. Appellant objected, countering that he
had merely been trying on re-direct to "show there's no gang
activity." Subsequently, Perez recalled that he had testified "about
how [he] had been working and spending time with [his] family," and
conceded that it was "not entirely true" because he had been doing
"some other things." The State then questioned Perez about his 1996
convictions for DWI and possession of marijuana, and his 1998 convictions for
DWI, driving while his license was suspended, and for evading arrest. Perez
admitted that he had been convicted of each of those offenses.
Standard of Review
As a general rule, specific acts of
misconduct may not be introduced to impeach a party or witness. See Prescott
v. State, 744 S.W.2d 128, 130 (Tex. Crim. App. 1988); Murphy v. State,
587 S.W.2d 718, 721 (Tex. Crim. App. 1979); Medina v. State, 828 S.W.2d
268, 269-70 (Tex. App.--San Antonio 1992, no pet.). However, opposing counsel
may introduce evidence about otherwise irrelevant past criminal history when a
witness, during direct examination, "open[s] the door" or leaves a
false impression with the jury as to the extent of either his prior arrests,
convictions, charges, or trouble with the police. See Prescott, 744
S.W.2d at 130-31; see also Delk v. State, 855 S.W.2d 700, 704 (Tex.
Crim. App.), cert. denied, 510 U.S. 982 (1993). This exception is not
limited to final convictions. See Prescott, 744 S.W.2d at 130-31.
Here, the trial court expressly ruled that
Perez's testimony left a false impression with the jury about his activities and
law abiding behavior since his gang member affiliations, saying, "You still
left the impression [Perez] hasn't been doing anything but working and going
home and staying with [his] family." After reviewing the record and the
overall tenor of Perez's testimony, we agree with the State that the trial court
could have found that Perez left a false impression with the jury. See Delk,
855 S.W.2d at 704. Accordingly, the trial court's ruling that Perez had opened
the door to the admission of evidence of his prior arrests and convictions is
not outside the zone of reasonable disagreement, and we will not disturb it on
appeal. See Burden, 55 S.W.3d at 615. We overrule point three.
We affirm the trial court's judgment.
 
                                                           
DIXON W. HOLMAN
                                                           
JUSTICE
 
PANEL B: HOLMAN, GARDNER, and WALKER, JJ.
PUBLISH
[DELIVERED FEBRUARY 13, 2003]

1. Appellant states in his brief that the victim's fight
with unidentified parties had occurred "days" before the shooting;
however, the record shows that the alleged fight between the victim and
"some of his friends" occurred sometime "prior to that
night."
2. Rule 609(a) reads as follows:

        
 (a) General Rule. For the purpose of attacking the credibility of a witness,
 evidence that the witness has been convicted of a crime shall be admitted if
 elicited from the witness or established by public record but only if the
 crime was a felony or involved moral turpitude, regardless of punishment, and
 the court determines that the probative value of admitting this evidence
 outweighs its prejudicial effect to a party.

Tex. R. Evid. 609(a).