### Cooper Young v. The State.

#### No. 3695.   Decided October 15, 1915.

#### Rehearing denied December 15, 1915.

**1.—Murder—Evidence—Clothes of Deceased—Newly Discovered Evidence.**

Where, upon trial of murder, the issue was raised as to whether the deceased was shot in the back or in front, and the State had produced in evi-

dence the shirt and undershirt of deceased showing two bullet holes in the back of them and none in front, and it was discovered that the coat of deceased had a bullet hole in the front, which it seemed defendant did not know before he went on trial, the coat not being produced on trial, defendant should have asked for the proper process and should not have waited until after the trial and then set this matter up as newly discovered evidence, and this matter would hardly present reversible error.

### 2.—Same—Evidence—Reputation of Deceased.

Where, upon trial of murder, the question of the reputation of the deceased for peace and order became an issue, the defendant should have been permitted to introduce testimony that the deceased had the general reputation of always carrying a pistol, it being an issue also that the deceased, at the time he was shot by the defendant, was advancing upon him and that threats by the deceased against the defendant had been communicated to him, and that defendant fired because he believed that the deceased was armed at the time.

### 3.—Same—Continuance—Practice on Appeal.

Where the judgment was reversed and the cause remanded upon other grounds, the overruling of the application for continuance need not be considered, although it seems that the same was meritorious.

Appeal from the District Court of Cass. Tried below before the Hon. H. F. O'Neal.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*A. C. Oliver* and *O'Neal & Alladay,* for appellant.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant when tried was convicted of murder and his punishment assessed at five years confinement in the penitentiary.

The State's evidence is that appellant, deceased and some other negroes were engaged in a game of craps in the woods. Deceased losing all his money, he requested a brother of appellant, B. B. Young, to pay him fifteen cents that he owed him. B. B. Young declined to pay it then, when deceased remarked if he, B. B. Young, placed down any more money on the game he was going to pick it up. Another brother of appellant, Tot Young, said to deceased, "They are paying off in Texas for picking up." Deceased replied he was not talking to Tot, and started towards him, when Tot grabbed a brick or rock and drew it back as if to throw it or strike with it. Deceased jumped behind another negro, when appellant drew a pistol, and someone calling the attention of deceased that appellant had a pistol, he broke and ran, when appellant fired at him five times, striking him twice in the back, killing him.

Appellant's witnesses would have the difficulty begin about in the same way, except they say when Tot Young made the remark to deceased about paying off for picking up, that deceased drew his knife

and started towards Tot, saying, "I am tired of being run over; I will kill all of you s——ns of bitches"; that it was at this time Tot grabbed the brick or rock, and deceased jumped behind another negro; appellant had said nothing up to this time; that Tot Young and deceased were dodging about; appellant had his hand in his pocket, and George Coleman grabbed him; that deceased began to edge towards appellant, shoving another darkey in front of him, when Mitch Dickerson called to George Coleman to release appellant, and said, "Don't you see that son-of-a-bitch coming up with his knife, he will cut hell out of him"; Coleman released appellant, when appellant says he called to deceased: "Uncle Booker, don't you come up on me with that knife." That deceased replied: "I ain't afraid of you," and kept coming, when he drew his pistol and fired. That as he fired, deceased turned his right side towards him; that deceased then turned and took a step or two away from him and he continued to shoot until deceased fell, firing five shots from an automatic pistol.

On the trial of the case the State produced the shirt and undershirt deceased had on, showing two bullet holes in the back of them, and none in front. On the trial of the case, when Henrietta Samuels, the wife of deceased, was introduced as a witness to prove up the two shirts, on cross-examination, she was asked where was the coat deceased had on, and she answered that it was at her home, and when asked why she did not bring the coat, she said the sheriff told her not to bring it—just to bring the shirts. After the trial, Justice Carloe went to the house of Henrietta Samuels and got the coat deceased was wearing on the day he was shot, and in addition to the two bullet holes in the back it had a bullet hole in front on the right side near the button, and appellant asked for a new trial on account of this newly discovered testimony. There was apparently no reason why appellant should know that the coat had been struck in front; it is true he testified deceased wheeled and threw his right side towards him as he fired the first shot, but he did not know he had struck deceased. When the coat was not brought into court by deceased's wife, this aroused their suspicion, and as soon as the trial was over they sent the justice of the peace to examine it. The question is, was it not the duty of appellant during the trial to ask for process for the coat? It could doubtless have been obtained then if proper process had been issued. The bullet hole in front of the coat was a most material fact to appellant. It supported his testimony that deceased was advancing on him just as he shot, and would have a tendency to disprove the evidence of the State that deceased was running from appellant and had his back towards him when the first shot was fired. The testimony would tend strongly, to say the least, to reduce the offense to manslaughter, for if deceased was advancing on appellant when he drew his pistol and fired the first shot, and deceased then abandoned the difficulty and fled, and appellant, while laboring under the excitement and passion of the moment, shot as he fled, this would be a case of manslaughter and not murder. Had appellant been found guilty of manslaughter the testi-

mony would not be so material, but he was adjudged guilty of murder. If this was the only complaint we would hardly feel authorized to reverse the case, for appellant should have had the coat brought into court during the trial or made an effort to do so, by having proper process issued, and if he had done so, and the coat not obtained, it would certainly present reversible error. However, as the court erred in excluding certain testimony offered by appellant on the trial, the rejection of that testimony, together with the above facts, we think, requires this case to be reversed.

Appellant introduced a number of witnesses who testified that the reputation of deceased for peace and order was bad; that he was a turbulent and violent man, and would execute any threat he might make. That he generally carried a shotgun or rifle with him. He desired to prove also by Mr. Cutwright and other witnesses that deceased had the general reputation of always going around with a pistol. This testimony was excluded by the court. Appellant states that the purpose of the testimony was to show that deceased went armed all the time, and for that reason it was reasonable for appellant to believe that he was armed at the time of the difficulty. Appellant testified deceased was advancing on him with an open knife at the time he drew the pistol and fired and he thought his life was in danger; he had testified as to threats of deceased communicated to him. Everyone is supposed to know the general reputation of a man in the community in which he lives—appellant as well as the balance of mankind. If deceased had the reputation of always going armed with a pistol, at all times, it would be reasonable for appellant to believe that deceased was so armed at the time, and such testimony would materially aid the jury in passing on the issues involved in this case in judging the appearances to appellant at the time. The testimony was admissible, and the court erred in excluding it.

Taking this view of the case, it is unnecessary to discuss the bill complaining of the action of the court in overruling his application for a continuance. Strictly speaking it does make a legal showing, but there are equities presented that appeal to one's judgment, for while due diligence may not be shown, yet circumstances are stated in a measure excusing this lack of diligence. However, it is unnecessary to pass on this question in view of the disposition of the case.

Reversed and remanded.

*Reversed and remanded.*

[Rehearing denied December 15, 1915.—Reporter.]