## C. J. DUNCAN v. THE STATE.

No. 21253.   Delivered December 18, 1940.
Rehearing Denied January 22, 1941.

The opinion states the case.

*De Witt Bowmer* and *Joe Carroll*, both of Temple, and *Martin M. White* and *White & Countess*, all of Belton, for appellant.

*Jim Evetts*, District Attorney, of Belton, *Henry Taylor*, Special Prosecutor, of Temple, and *Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for a term of seven years.

It appears from the record that sometime prior to the killing, the deceased and appellant were partners in a filling-station at or near the town of Burnet. They also sold fish bait to sportsmen who came to the Buchanan Dam to fish. A short time prior to the homicide they dissolved the partnership and went back to Temple, their former home. It further appears that sometime later, the deceased contended that in the division of the assets of their business he did not get his full share; that appellant owed him eighty dollars; that on several occasions he had made demands on appellant for the same. However, appellant insisted that he did not owe the deceased anything. It was shown that the deceased made many serious threats against appellant. At the time of the homicide and for some time prior thereto appellant was working for his brother, Marion Duncan, in a furniture store. On the afternoon in question, a brother-in-law of appellant was standing on the sidewalk in front of the furniture store and when he saw the deceased coming up the street he stepped into the store and told appellant that the deceased was out there, whereupon appellant took a pistol, went to the door and fired at the deceased, who ran into a restaurant, fell to the floor, crawled a few feet, arose, ran outside and again fell to the ground while appellant pursued him, firing several shots at the fleeing man. When the deceased was on his hands and knees trying to get back on the sidewalk, appellant fired two more shots into his helpless victim. There was some testimony that when the deceased came up the street just before he was fired upon, he had an open pocket knife in his hand. However, no knife or any kind of a weapon was found on the body of the deceased nor where he fell or anywhere along the route he traveled from the point where he was first fired upon to the place where he fell and expired, although a careful search by the officers was immediately made of the premises and along the route which the deceased went when fleeing from the deadly assault.

Appellant did not take the witness stand and testify in his own behalf.

Bill of Exception No. 2 reflects the following occurrence: After R. S. Bryan had testified to threats which the deceased had made against the appellant and that he had theretofore seen the deceased attack one, G. O. Wendt, he was asked by

appellant's counsel: "Did George Watters brutally beat G. O. Wendt in your presence?" The State objected to said question being answered by the witness and the court sustained the objection, to which appellant promptly excepted. The court qualified this bill and in his qualification states that during the trial and before the testimony was concluded, he reversed his ruling and advised appellant and his counsel that they might recall the witness and prove the facts sought to be shown by said witness, but appellant failed to avail himself of the opportunity. Under the circumstances, the bill fails to reflect any error.

By Bill of Exception No. 3 appellant claims that after he had proved by John R. Bigham that on three different occasions the appellant and his brother had talked to him relative to the conduct of the deceased and had sought his advice, counsel for appellant thereupon propounded to him the following question: "What advice did you give the defendant and his brother?" The State objected to said question being answered. The court sustained the objection and appellant excepted. The court qualified said bill and in his qualification states that the witness did testify as follows: "I told him that I didn't know whether George would hurt him or whether he wouldn't; I wasn't in position to say and I didn't know."

This was fully sustained by the record. The greater part of the claimed advice to which the witness would have testified, as set out in the bill, is not advice but the expression of an opinion. We are forced to confess that we fail to see how the excluded testimony was relevant to any issue in the case.

Bill of Exception No. 4 complains of the exclusion of similar testimony as shown in Bill No. 2. The court qualified this bill and in his qualification states that he reversed his ruling before the testimony was closed and advised appellant and his counsel that they could recall the witness; that he would be permitted to answer the question, but appellant and his counsel failed to avail themselves of the opportunity. Consequently they have no just grounds of complaint.

Bill of Exception No. 5 shows that appellant undertook to offer clippings from the Dallas Morning News which carried a news item to the effect that the deceased was placed under a bond in the sum of $500.00 by the Justice of the Peace in and for Justice Precinct No. 2 of Dallas County. This newspaper report was clearly hearsay and not admissible. Moreover, there

is no evidence to show that appellant had any knowledge thereof and it could not have had any bearing on his state of mind.

Bill of Exception No. 6 shows that after appellant had proved many threats by deceased against him, he then placed Dr. J. O. Baity, Professor of English at the Southern Methodist University at Dallas, on the witness stand and propounded to him the following question: "Did you know the general reputation of the deceased while a student at Southern Methodist University for being a quiet, peaceable, law-abiding citizen or otherwise?"

The State objected to the witness answering the question and the court sustained the objection, to which appellant excepted. The bill recites that if the witness had been permitted to answer the question, he would have answered it in the affirmative; that appellant would then have propounded the further question whether said reputation was good or bad and that the witness would have answered that it was bad. The court qualified said bill and in his qualification states that he sustained the State's objection because the question was not in compliance with Art. 1258, P. C., 1925, and advised counsel for appellant that if he would reframe his question in compliance with the statute the witness would be permitted to answer the same. This he declined to do. We think that the court's ruling was correct. Under the statute referred to, appellant, in view of the proof of threats, would have been entiteld to show that the deceased was a man of violent or dangerous character but not that his general reputation as a peaceable, law-abiding citizen was bad. Under the statute appellant was restricted to proof of that character which showed a violent and dangerous disposition on the part of the deceased.

Bill of Exception No. 7 is without merit and we see no need to enter upon an extended discussion thereof.

The matter complained of in Bill of Exception No. 8 is similar to that complained of in Bill No. 6 in which similar questions were propounded to Mrs. Gardner, matron of the young men's dormitory at Southern Methodist University, as those which were propounded to Dr. Baity and the bill shows that she would have given the same answer. Consequently the disposition made of the question in Bill No. 6 also disposes of the question presented in this bill.

Bills of Exception Nos. 9 and 11 complain of the same matter as presented in Bills Nos. 6 and 8, and what we have

said in disposing of the asserted complaints therein also applies here.

Bill of Exception No. 10 reflects the following occurrence: After the conclusion of the testimony and after appellant's counsel had examined the court's charge and presented their objections thereto in writing, the court read his charge to the jury and attached thereto three different forms of a verdict: one finding appellant guilty of murder with malice, one finding him guilty of murder without malice, each of which contained a blank space for the insertion by the jury of the number of years of confinement in the penitentiary in the event they found him guilty, and also a form of verdict finding him not guilty. After deliberating for some time, the jury returned into court their verdict finding appellant guilty of murder without malice and assessed his punishment at confinement in the penitentiary for a term of seven years. After the verdict was read aloud by the clerk, the court stated to the jury that they had rendered an impossible verdict and told them to retire and read paragraph 2 of the charge, which they did, and then returned with a verdict finding appellant guilty of murder with malice and assessing the same punishment. This matter was urged by appellant as a ground for a new trial and testimony was offered by him and also by the State relative to the question. The jurors who were called to testify stated that they found appellant guilty of murder with malice but inadvertently inserted "seven years" in the wrong form of the verdict prepared for them by the court; that as soon as they read the verdict and paragraph 2 of the court's charge they noticed the error and corrected it; that their verdict in each instance was the same.

Under Art. 696, C. C. P., the court was authorized to reject the verdict and send the jurors back to the jury-room to again consider their verdict.

In the case of Hollingsworth v. State, 94 Texas Cr. R. 244, the indictment contained three counts charging separate kindred offenses. The court in his charge submitted but one count. The verdict of the jury was, guilty "as charged in the indictment." This court said that the jury should have been required to correct their verdict so as to make it conform to the charge of the court and ascertain the count under which they found the accused guilty. See Williams v. State, 78 Texas Cr. R. 648; Woolfolk v. State, 127 Texas Cr. R. 156; Gandy v. State, 140 S. W. (2d) 182.

Appellant complains because one of the twelve jurors by

whom he was tried could not read or write the English language. This, of course, was a ground for challenge which appellant might waive, and he no doubt waived it in this instance. Appellant had the opportunity to examine the juror as to his qualifications and he did so. Being satisfied, he accepted him and he cannot now complain.

Appellant addressed seven separate and distinct objections to the court's main charge. The main objection seems to be based upon the ground that the court failed and refused to instruct the jury upon the theory of defense of another. If the evidence had raised such an issue then, of course, appellant would have been entitled to an instruction thereon, and the court no doubt would have responded to the objection, but, in our opinion, the evidence did not raise the issue. The salient facts testified to by the witnesses relative to what occurred at the time of and immediately preceding the firing of the fatal shot are as follows: "J. O. Kiser, a brother-in-law of the appellant, testified that he went to the store of his brother-in-law, M. S. Duncan, where appellant was employed, about 5:00 p. m., and while standing in the vestibule of said building he saw the deceased coming down the street with a knife in his left hand. Realizing that there might be trouble brewing he went inside of the store and told the appellant that the deceased was out there; that he had not gone very far inside of the store when he heard the report of a gun on the outside. Nothing was said, not a word, by either the deceased or the appellant up to and at the time the shot was fired. After the report of the gun, the deceased went running down the street with the appellant in pursuit. M. S. Duncan, the owner of the store and a brother of the appellant, testified that on the afternoon of the homicide his brother, Raymond, came to the store and told him that the deceased had threatened to cut him (Raymond) up and said he would "wipe out the whole Duncan delegation" (and there was testimony from other sources to the same effect); that appellant was present and heard this conversation; that when the first shot was fired it was getting dark and he (M. S. Duncan) turned on the lights; that he was turning them on when he heard the "pop" of a gun; that he was not at the front of the store at the time the shooting started; that the first thing that attracted his attention was the firing of the gun. There is not one word, act or demonstration testified to by any witness which would in the remotest degree indicate that the deceased was going to carry into execution his threat to "wipe out the whole Duncan delegation." There is no evidence that

deceased made any hostile demonstration towards either of the members of the Duncan family; nor was he within such distance of either of them as to have committed an assault upon any of them with the pocket-knife, if he had one. Consequently there was no necessity for a charge on the law relating to the defense of another.

In the case of Gomez v. State, 116 Texas Cr. R. 529, this Court said: "According to this testimony it shows that any attack that may have been made by the deceased and his brother upon the cousin of the appellant had ceased before the homicide and the cousin had left and was not present when the deceased was cut by appellant, and the court having given a full charge on the right of self-defense on the part of appellant from any attack, real or apparent, that may have been made upon him by deceased, and the evidence failing to show that any act on the part of the appellant was made in defense of or against any attack that was being made on his cousin by the deceased, we hold that there was no error on the part of the trial court in failing to give a charge on the right of appellant to defend his cousin against any assault made by the deceased and his brother upon said cousin."

See also Wilson v. State, 92 Texas Cr. R. 118; Stoker v. State, 118 Texas Cr. R. 528; Singleton v. State, 167 S. W. 46 (49) ; 74 Texas Cr. R. 71.

Appellant, by his counsel, filed an able brief and cites quite a number of authorities which he contends support his position. We have read the brief, as well as the authorities with much interest, but do not believe that they sustain his contention. The facts proven on the trial of the cases to which he refers readily distinguish those cases from the facts in the present instance.

Having reached the conclusion that no reversible error is shown by the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

The appellant's motion for rehearing in this cause very forcefully presents additional argument in behalf of his bill

of exception No. Ten and insists that the original opinion was wrong in failing to sustain same.

The various articles of the statute dealing with the handling of the subject of jury verdicts are copied in the motion and referred to. All of this we have considered, and it is our conclusion that, while appellant has presented a very effective argument, the wrong premise is taken. He bases his argument on the conclusion which he first reaches that when the jury presented their verdict as described in the original opinion and the court read the same and had it read by the clerk, that this was such an acceptance of the verdict as made it final, discharged the jury and relieved it of any further power in the case. If that be correct the argument which follows is logical and based on good authority.

Particular stress is laid on the opinion in Landers v. State, 25 S. W. (2d) 868, wherein it is held that the jury's verdict finding the defendant guilty without malice results in acquittal of the charge of murder with malice. It is sufficient to say that in the Landers case the verdict was received and judgment entered thereon and the court was only considering the consequences of a verdict about the receipt of which there was no question. In the case before us the court read the verdict and had the clerk to read it. Appellant was present in the court room and the record does not indicate that objection was made to the procedure at that particular time. After the clerk had read the verdict, and without announcing that it would be received and the jury discharged and judgment entered thereon, the court, perceiving that the verdict was fatally defective as presented, instructed the jury to return to their room for further deliberation, and called their attention to the paragraph of his charge which instructed them as to the penalty which they might assess for murder with malice and for murder without malice. We are unable to carve out of this any oral instruction to the jury, but merely a reference to that which had already been given them in writing. We are not able to agree with counsel that the court's act in having the verdict read under the circumstances completed his final transaction of receiving the verdict, discharging the jury and entering judgment thereon. It was still within his control, as was the jury. The action he took was not only proper, but it was his duty to do so. Neither are we able to agree that the things he said constituted oral instruction to the jury or undue emphasis on a particular section of his charge. They were as much at liberty, upon returning

to the jury room, to adhere to the statement that they found him guilty without malice and reduce the penalty as they were to change the verdict as they did. According to their testimony on the motion for new trial they had made a mistake in filling out the wrong form of verdict and, without further deliberation, corrected that mistake.

The authorities presented by counsel for appellant are not pertinent to the question before us, but we think that Hollingsworth v. State, supra; Williams v. State, supra; Woolfolk v. State, supra, and Gandy v. State, supra, thoroughly support the view of this court that it was the duty of the trial judge to have the verdict corrected when it was discovered a mistake had been made. Bill of Exception No. Ten is not sustained.

Further complaint is made in the motion for rehearing that appellant had not been given a fair and impartial trial before a jury of twelve men, because of the disqualification of a juror on the ground that he could not read and write. This juror was recalled for examination and testified that he was a Czech and said: "I cannot write the English language much, but I can understand; you did not ask me that question before; nobody didn't ask me that question." Further he said: "I take a daily paper, The Temple Daily Telegram. That is printed in English. I read the newspaper some time."

The foregoing is the only evidence we find introduced on the subject. It is wholly insufficient to support the contention, and the objection seems without merit.

We have considered each and every question raised and believe the original opinion properly disposes of them.

The motion for rehearing is overruled.