TOM HENRY V. THE STATE.

No. 23673. Delivered June 11, 1947.
Appellant's Rehearing Granted November 12, 1947.
State's Motion for Rehearing Overruled January 14, 1948.

BEAUCHAMP, Judge, dissenting on rehearing.

*Joseph A. Chandler* and *C. O. McMillan,* both of Stephenville, and *Otis Rogers* and *Truman Power,* both of Fort Worth, for appellant.

*Sam Cleveland,* District Attorney, of Stephenville, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a sentence of ten years in the penitentiary on a charge of murder.

The homicide took place on the streets of Dublin, on the 20th day of February, 1946. The appellant had known the deceased for a great many years, and was acquainted with his reputation for being a violent and dangerous man. They had a land deal some time previously in which an incident presented an opportunity for the deceased to express himself along this line to the appellant, which he did. In the early part of November, prior to the killing, the appellant, who was engaged in the real estate business, was in a section of the town where the deceased lived. On this occasion the deceased stopped appellant in the street, upbraided him for being in that area, and accused him of calling at the home of a woman whose name appears in the record several times. He then threatened to do violence to appellant if he ever caught him back in that section of the town again. What interest the deceased had in the matter, and why he assumed that responsibility is not reflected by the record.

On the occasion of the homicide appellant, according to his testimony, had been in the forbidden section of Dublin in the home of another party of the same family name as the woman involved, where he remained only a few minutes. As he returned towards the business district he came in contact with and was closely followed by the deceased, through several turns from one street to another, until they reached a parking place in the heart of the business district, where appellant parked his car first—the deceased following close behind him and parking by the left side of him. There is but little conflict in the evidence between the State's witnesses and that of appellant as to what occurred, which conflict does not appear to be very material. Appellant got out of his car and was near the front, and a little to the right, of the car of the deceased. He says that deceased called him and told him to come around on the left side of the car. This he refused to do, telling deceased that he was mad and that appellant was not able to fight him. At this the deceased got out of his car, walked around behind it with his hands by his side and approached appellant, walking between the two cars. As he reached the rear wheel of his own car appellant began shooting. He described the three shots fired as being very rapid, his victim fell to the ground. Appellant backed out and drove to his home in Stephenville, where he surrendered to the sheriff.

Witnesses, who were parked on the opposite side of appellant's car from the deceased, heard and observed the things that took place and testified in behalf of the State. Their evidence differs in that they said no word was spoken until

the deceased fell to the ground, at which time he remarked, "Tom, I just wanted to talk to you."

Another disinterested witness, who came to the aid of the injured man, testified to a remark which he made to the effect that he had ordered appellant to leave town. This constitutes the material evidence as to the details of the homicide.

Appellant plead self-defense and introduced much evidence from his physician showing that he had heart trouble and was not able to engage in a conflict. He detailed the threat made against him in November, and gave as his reason for shooting that, under the circumstances of his physical condition, he feared that the deceased was going to carry out his threat, and that it would mean the appellant's death to engage in such a combat as appeared to him to be imminent. Based on this testimony, the cautious trial court gave a charge on the right of self-defense in general terms.

The defendant was permitted to prove by a number of witnesses, from Wichita Falls and other places, that the deceased was a violent and dangerous man. He sought to prove further that he was "quarrelsome, contentious, overbearing, and dangerous." All such evidence was excluded by the court and his ruling constitutes the chief ground upon which appellant seeks a reversal of the case. The question has frequently been before us and, in construing Article 1258, Vernon's Ann. Penal Code, the cases consistently support the ruling of the trial court in limiting the evidence of proof of the character which showed deceased to be a "violent and dangerous" man. This is based on his reliance for right to act on previous threats. See Duncan v. State, 146 S. W. (2d) 749.

When proof was admitted that he was a violent and dangerous man, such proof is inclusive of all of that part of the rejected testimony which is pertinent to the issue raised. One might be quarrelsome, contentious and overbearing without being dangerous or violent. He might have these qualities and yet they may not have force to indicate under the circumstances now before us, that the deceased was intending to harm appellant. There is no proof that being quarrelsome would do so, or that being contentious would disturb his heart trouble, or that being overbearing would in any way injure him. There is no indication that these characteristics played any part in the unfortunate affair. Deceased was walking towards appellant with his hands down and at some time, either before or after the

shooting, he said, "I just want to talk to you." We think the court properly excluded the proof complained of in the several bills of exception, in so far as it showed deceased to be quarrelsome, contentious and overbearing.

The next question complains of the refusal of the court to instruct the jury to the effect that if the defendant was justified in firing the first shot he would have the right to continue to fire so long as it reasonably appeared to the defendant that the danger continued to exist. We do not think that such charge was called for under the evidence. Reliance must be had on appellant's own testimony for this charge, and his right to have it depends upon whether or not the danger which he saw continued to exist, and whether or not he continued to shoot over a period of time calling for it. He testified on cross-examination that when deceased started towards him he repeated his order to stop, but deceased kept coming on, and then he says, "When I shot him, he fell just about even with the center of the back wheel of his car. * * * he just had his hands down coming towards me,—walking along. * * * I started shooting, and as to how many shots I shot, three shots; and the three shots, as to hitting him every time, I don't know whether I hit him every time or not. As to how fast I shot, well, if you, I guess, if you ever shot one of those guns, but that would be the best way to find out; it shoots awful fast, I don't know exactly; I never timed it; I don't know, if you ever shot one, of course, you would know." There is no other evidence found in the record on the subject pertinent to the requested charge.

There being no evidence of continuing danger, and there being no continuation of the shooting after a change of the position of the parties, we are unable to find any support for the contention made that the charge should have been given. Walker v. State, 267 S. W. 988; Goodman v. State, 114 S. W. (2d) 885; and Conn v. State, 158 S. W. (2d) 503.

Exception was taken to the court's charge because, "* * * nowhere in the court,s charge has the court instructed the jury to the effect that if they believed from the evidence, or if the evidence raised in their minds a reasonable doubt to the effect that, at the time of the fatal encounter, the defendant was suffering from a heart disease, or believed himself to be suffering from a heart disease to the extent that he could not withstand a violent, physical attack from the deceased, and that it had reasonably appeared to the defendant at that time and viewing the same from his standpoint and no other, that

the deceased was about to make a violent physical attack against him the defendant, that the defendant would have the right to stand his ground, to shoot and to kill the deceased, if the defendant believed that such violent physical attack would likely result in death or serious bodily injury to him, the defendant."

The court's general charge on self-defense, whether required or not, was sufficient to protect appellant in all of his rights. The charge which appellant wanted would have been on the weight of the evidence and the court properly refused to change his charge to meet the exceptions.

Several bills relate to the argument of the county attorney, in opening the prosecution, to the effect that defendant was guilty of misconduct with a woman. We have examined the record very carefully and do not find that either bill contains the argument in just that language. It does relate to the testimony given by the appellant, in his own behalf, and if it is subject to the construction sought to be given to it then the evidence of the appellant himself is also subject to the same construction, and the argument would be timely. In one bill the attorney said that deceased wanted to talk to appellant, "* * * because of Tom Henry's conduct right near McCarty's own doorstep." The court instructed the jury orally not to consider any argument unless it was based on evidence which they heard from the witness stand. After this instruction was given by the court no further instruction was requested nor given in regard to the matter.

By Bill of Exception No. 14, the county attorney is quoted as saying: "I submit to you, gentlemen of the jury, that this defendant in that little errant out there he told you he argued about in that meeting with him, it is evident he didn't fear Basil McCarty—Basil McCarty was interfering with his business a little is what he thought—his social prerogatives on the hill in the McCarty neighborhood." We are unable to construe the foregoing statement as prejudicial and inflammatory, which was the basis of the objection. If it should reflect on appellant it must be because of evidence which he gave on the subject. If that evidence does not reflect on him the argument certainly would not do so. Furtheremore, appellant had testified that deceased had ordered him out of the community and forbid him to come back again. On the occasion of the homicide he was in that community and the deceased followed him to town, drove behind him, bumped into his car on at least two occasions, and

was in fact, according to his own testimony, interfering with whatever business he might have had in that community. If such activities were "extra-curricular" it would be nothing damaging—unless the jury is to assume so as a deduction from the evidence given on the subject. Hence, we are unable to see the prejudicial or the inflammatory nature. None is pointed out in the bill and the brief does not satisfactorily present it.

Bill of Exception No. 16 complains of the argument of Mr. Cleveland, District Attorney. As the same is explained and qualified by the court, this argument was a logical discussion on the argument made by defense counsel in behalf of their client.

Finding no error, the judgment is affirmed.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant's Bill of Exceptions No. 1 relates to the trial court's failure to allow a certain doctor to detail what he had been told by appellant relative to the symptoms of a disease from which he seemed to be suffering. We think this attempted delineation of such symptoms was hearsay and also a self-serving declaration and was not admissible as offered.

Bill of Exceptions No. 2 is incomplete. It reflects that a witness was asked if she was acquainted with the deceased's reputation as being a quarrelsome, contentious, overbearing and dangerous man, to which question it is claimed the witness would have answered, "Yes", but was not allowed to do so. The bill goes no further than that, and therefrom we are unable to see any injury to appellant. This bill does not show what her final answer would be as to whether such was good or bad. However, there are many other and further bills relating to the same subject, in all of which it seems that the trial court allowed appellant to prove that the deceased possessed a general reputation as a man of violence, but each time he refused to allow proof relative to the deceased's reputation as being a quarrelsome, contentious, overbearing and dangerous man. However, it is noted that the witnesses were allowed to testify that the deceased's reputation as a man of violence alone was bad. All of these bills were qualified by the trial court with the statement that nowhere in appellant's testimony is it shown that he knew the deceased's reputation for being a quarrelsome, contentious, overbearing and dangerous man.

Another bill complains because the trial court refused to allow appellant to prove that the deceased was a man of quick and violent temper. This bill is also qualified to the extent that nowhere in appellant's testimony is it shown in those words that he knew of the deceased's reputation as to these characteristics.

Again, in a further bill appellant attempted to prove by a witness who was acquainted with the deceased that from the witness' knowledge and acquaintanceship with deceased, would he (the witness) consider the deceased a fighting, dangerous man of high temper? Attached to said bill, we find the same qualification of the trial court as above set forth.

A further bill shows that after a witness had answered that deceased's reputation as a man of violence was not good, he was then asked but not allowed to answer, would the witness consider the deceased as a fighting man of high temper or as a man slow to anger?

There are many more bills directed at the fact that the trial court refused to allow appellant to prove anything relative to the deceased's characteristics save that of being a violent man, and to each bill is appended the same qualification of the trial judge that nowhere in the record is there found a statement in such words that "he, the defendant, was familiar with the general reputation of the deceased as a violent and fighting man." Other qualifications to further bills along the same line merely change the characteristics of the deceased as quarrelsome, contentious, overbearing and dangerous, and show appellant's failure to testify that he was familiar with the deceased's reputation for such characteristics.

We fear that the careful trial court has incorrectly limited the rule relative to threats as found in Article 1258, P. C., where threats have been proven, it is admissible to make inquiry as to whether the deceased was a man of violent or dangerous character, or a man of kind and inoffensive disposition, etc. This rule has been enlarged upon as shown in Horbach v. State, 43 Tex. 242; and it will be noted therefrom that if "the evidence exhibiting the acts of the deceased at the time of the killing constituted a predicate for the admission of the proof of the general character of the deceased as a violent and dangerous man, and that he was in the habit of carrying weapons", such proof should be admitted upon the ground of self-defense. True it is that the qualifications to said bills state

that appellant did not say in those words that he knew of such qualities on the part of the deceased, but he did testify that he knew and had heard of many difficulties and fights in which the deceased had engaged, and many such were testified to by him as well as by other witnesses.

As authority for the proposition that where self-defense is an issue, or who began the difficulty, the appellant may prove, for the purpose of showing who probably began the difficulty, that the deceased had the general reputation of being a violent and dangerous man. Such proof is admissible whether threats are involved or not. See Meeks v. State, 135 Tex. Cr. R. 170, 117 S. W. (2d) 454; and many cases cited on page 457.

We think it is abundantly shown by the proof that appellant knew of many of the acts attributed to the deceased that were utilized by the proffered witnesses in arriving at what they thought deceased's reputation to be. Appellant himself testified to having heard of many such instances, and while he nowhere says that he knew what the effect of such conduct upon the deceased's part was in forming the opinion of the witnesses as to the general reputation, and nowhere does he say that he knew what the people thought of such conduct in forming their opinions relative to deceased's general reputation along certain lines, nevertheless, we think the testimony of appellant clearly shows that he was familiar with such acts upon the part of the deceased and that he may have had such in contemplation at the time he fired the fatal shots.

The reputation of deceased for the various qualities herein refused by the trial court does not rest upon the law of threats, as set forth in Art. 1258, P. C., but goes further and is based upon appellant's right of self-defense, and as to who began the difficulty, and we express the opinion that same should have been allowed. See Young v. State, 78 Tex. Cr. R. 314, 180 S. W. 686, where it was held that it was error to exclude testimony that deceased had a bad reputation for peace and order, was a turbulent and violent man, who would execute any threat made, and was reputed to carry a shotgun or rifle with him.

In Lacey v. State, 83 Tex. Cr. R. 607, 204 S. W. 433, it was held that on the issue of self-defense accused should have been allowed to show that deceased had the reputation of being a quarrelsome, contentious and overbearing man, and that the accused knew of such reputation.

See also Williams v. State, 14 Tex. Cr. App. 102, which was reversed for the failure to allow accused to show deceased's reputation as a violent and dangerous man.

In Cole v. State, 48 Tex. Cr. R. 439, 88 S. W. 341, we said:

"The doctrine seems to be that under such circumstances (self-defense) appellant has the right to have in evidence any fact which tends to prove the bona fides of his belief, that he was in danger. In that respect he can rely on proof of the desperate character of his adversary, or on proof of some special act or communication by deceased to him, which indicates his dangerous character. Childers v. State, 30 Tex. Crim. App., 193; Dodson v. State, 70 S. W. Rep. 969."

In Daniels v. State, 58 Tex. Cr. R. 569, 126 S. W. 1153, it was held error to refuse to allow the acused to prove that the injured party, in a difficulty, had the general character of being a ferocious, dangerous and high-tempered woman and bore such reputation in the town of Greenville, Hunt County, and that her reputation for peace and quietude was not good.

In Meeks v. State, supra, it was held that irrespective of threats, when self-defense is an issue, the deceased's reputation for being a violent and dangerous man is admissible as going to show who probably began the difficulty, with many cases cited thereunder. This seems to be the rule in other states also.

Under this line of decisions, we are of the opinion that the trial court erred in limiting the testimony to the deceased's reputation for violence alone.

It is again asserted that our original opinion was in error in upholding the trial court relative to his failure to sustain an exception to the court's charge, as set forth therein. We remain of the opinion that such requested instruction would have been upon the weight of the evidence and was properly refused. Appellant's right of self-defense was submitted to the jury upon a proper instruction, and in such defensive testimony, all matters of health and weakness of body were given in proof.

Being impressed with the error shown relative to the proof of the reputation of the deceased in certain matters, the appellant's motion for a rehearing is granted, the affirmance hereof set aside, and the cause is now reversed and remanded

BEAUCHAMP, Judge (dissenting on rehearing).

I am unable to agree with my associates in the disposition of this case. The question upon which reversal is here had was discussed in the original opinion, which I believe to be correct.

It is noted that the evidence held to be admissible by the majority opinion is based solely on the ground that reliance was had on self-defense. We mentioned the court's charge on self-defense in the original opinion in a manner indicating our view, then and now, that it was a cautious act on the part of the court. I do not believe evidence was given which would require such charge. The fact that the court gave it, under this circumstance, would not make the additional evidence admissible unless it was required to be given in the charge. I think it was not, and I quote from the evidence on the subject given by the appel'ant himself, which is the only evidence that could form a basis for the charge:

"Now what McCarty said to me when he drove up there, and what I said to him: just as I stepped up on that curb, and I had just stepped on it, he hollered: 'Tom, come here; I want to talk to you;' I stepped back between my car and his to talk; he said 'Come around on this side." I said 'No, you're mad, Bath; I don't want no trouble; I'm not able to fight you; I'm not coming around there,' and he says 'Well, God dam you, I can come around there.' I says, "No, don't come around here; I'm not able to fight you; I don't want no trouble.' What he then did: he got out of his car and come around the back way, he had a little lumber on the side, and he come around back end of his car, and I told him, I says,—and when he got around to the back end of his car, starting up towards me; I was up here near the front end of my car, and what I told him,—I said, 'Stop, Bath, I tell you to stop.' He just kept coming, in between my car and his car.

"He did not stop when I told him to stop; he did not let up at a'l. Then, what I did: I shot him,—I went to shooting to protect myself,—the only means I knew of to keep him from killing me. I WAS, AT THAT TIME, AFRAID THAT HE WAS ABOUT TO ATTACK ME; I had been afraid of him for a long time; ever since I was told I wasn't able to fool with him; and I absolutely was afraid that an attack by McCarty at that time would result in my death. * * * From my knowledge of my physical condition I did fear that an attack by McCarty would likely produce death,—I say, from my knowledge of my heart condition, I did fear that an attack by McCarty would likely produce death

to me, OR I WOULD NOT HAVE SHOT HIM ON THAT OCCASION." (Emphasis added.)

Furthermore, the jury found that he did not act in self-defense and I do not believe the additional evidence would have had any probative force, under his version, to have changed their verdict. He told why he shot and it was not because of this reputation of deceased.

From the foregoing, it would seem that his fear of injury from the deceased was not because of an act which deceased was threatening to commit, because there was no threat, either by word or action, only that he wanted to talk to him. Other witnesses said deceased had his hands by his side and appellant does not deny this. As I see it, appellant says he shot because deceased was coming toward him—no weapon, no threat—solely because appellant had a heart trouble. To hold that this called for a charge on self-defense is inconsistent with the further holding in the original opinion, and in the majority opinion on rehearing, that the court was not required to give the requested charge relating to appellant's physical condition.

There is no disagreement between us as to the law, in a proper case. The court should have declined to give the charge on self-defense, in which event there would be no basis for the majority opinion reversing the case. The fact that he gave appellant more than he is entitled to have in his charge does not, in my opinion, make it error to refuse to admit the evidence discussed in the majority opinion.

I respectfully dissent.

ON STATE'S MOTION FOR REHEARING.

DAVIDSON, Judge.

The State, through its district attorney, has filed a motion for rehearing, insisting, in accordance with the view expressed in the dissenting opinion by Judge Beauchamp, that the facts did not raise self-defense and therefore no issue arose whereby proof of the deceased's reputation for being a quarrelsome, contentious, overbearing and dangerous man was admissible.

The trial court submitted to the jury self-defense from actual as well as apparent attack.

295

Having so recognized that self-defense was an issue and was to be submitted to the jury, the appellant was entitled to introduce testimony admissible upon that issue. Moreover, the bills of exception complaining of the refusal to admit proof of the reputation of the deceased in the particulars mentioned certify, as a fact, that self-defense was a defense in the case.

We have repeatedly held that this court is bound by the recitals in the bills of exception and cannot look to the statement of facts to determine the correctness of those recitals. Baldwin v. State, 130 Tex. Cr. R. 377, 94 S. W. (2d) 1175; Galan v. State, 76 Tex. Cr. R. 619, 177 S. W. 124.

We remain of the opinion that the bills of exception must be appraised upon the theory that the issue of self-defense was in the case.

The State insists that the terms "violent" and "dangerous" are synonymous and, therefore, it was not reversible error to refuse to permit appellant to prove also that deceased was a dangerous man. Whether these terms are synonymous, under the record as here presented, need not be determined.

The record reveals that after the appellant had proven the bad reputation of the deceased for violence and had offered to prove, also, deceased's bad reputation for being a quarrelsome, contentious, overbearing, and dangerous man, the State proved by witnesses, after having first attested acquaintance with the general reputation of deceased for being a quiet, inoffensive man or a violent and dangerous one, that deceased was a quiet and inoffensive man.

It is apparent, therefore, that the State proved the good reputation of the deceased in the characteristic which had been denied to the appellant. If the State was to prove the good reputation of the deceased for being a quiet and inoffensive man, certainly the appellant was entitled to prove the contrary.

In the light of what has been said, we remain of the conclusion that reversible error is here reflected, and the State's motion for rehearing is overruled.

Opinion approved by the Court.